The next case to be argued today is United States v. McCallum, number 182160. Ms. McCallum, challenges or raises on appeal the procedural and substantive reasonableness of his sentence. Turning first to procedural and reasonableness, the first point Mr. McCallum raises is that the district court miscalculated his guideline range when it included the enhancement for sophisticated means. Taken as a whole, which this court does upon review, the offense conduct here bears none of the architecture necessary for the sophisticated means enhancement. Under the guideline, sophisticated means is applied where there's especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense, or conduct such as hiding assets or transactions both through fictitious entities, shell corporations, or offshore accounts. But he did have various bank accounts, and he did transfer money from one to the other.  He did that to conceal. No, Your Honor. That's not a — our position would be he did not do that to conceal, and, in fact, it was readily apparent whose bank accounts those were. Prior to the offense conduct here — And go ahead. Prior to the offense conduct here, which ran from 2008 to 2010, Mr. McCallum had several businesses for many years in several different corporate names. The government presented his office manager at trial. Her testimony establishes that it was well within his practice to transfer funds among these accounts prior to the offense conduct. Whether that's good business practice or not, it wasn't done or structured in an effort to facilitate or conceal this offense. Nonetheless, do we have to look at intent? I mean, right, the characteristics of this crime were that it crossed jurisdictions, was U.S. and Canada. It was undetected for many years, involved the transfer of funds among many accounts, and involved the creation and use of fake promissory notes and loan documentation. And we — I don't think we've required much more than that to, together, count for providing a predicate for applying the sophisticated means enhancement. So I think that the Court has required that there be an intent. In other words, when you look at the case law of this Court, the type of conduct that we're talking about, the creation of accounts for the hiding of transactions, which is what the guidelines require, the creation of shell corporations that engage, by definition, in no legitimate business, is what the guidelines require. Here, what happened during the financial downturn of 2008 is that Mr. McCollum's legitimate businesses imploded, and he lost millions of dollars of primarily his father-in-law's money. He turned then to more risky investments in an attempt to recoup, and therein began what would amount to this crime. It's not a simple Ponzi scheme where he was taking money from one investor and using it solely to pay other earlier investors. What you find here is that he is taking money by falsely representing high returns to investors, therein is the fraud, by representing that it's secured by real estate or insurance, and therein is the fraud. But he uses a portion of that money to invest in other real estate transactions, like the Barton Hotel in Lewiston and the Doe Valley Estates in Kentucky, actual legitimate real estate investments, though not nearly worth what he was representing. He does use a portion of the money to pay off earlier investors, but he is chasing his losses and gambling to try to recoup what he lost in the economic downturn. The case law, Your Honor, here I believe requires architecture. I think the guidelines require architecture, that the fraud be structured in a way so that when the approach to an investor happens, it is designed to overcome their will, so to speak. And if you look at some of the case law, that involves creation of fictitious portfolios of assets that don't exist. The alteration or creation of financial worth statements didn't happen here, but offered to prospective investors so that they'll rely on those. The commentary on the guidelines says especially complex or especially intricate, as you say, pertaining to the execution or concealment. So we're just carrying out the execution. For example, locating the main office of the scheme in one jurisdiction but the soliciting operations in another is enough to be sophisticated means. That's not particularly complex. The use of fictitious entities, corporate shells or offshore financial accounts ordinarily indicates. It's the use of them. The fact that he used several different bank accounts, whether they were preexisting or not, still suggests to me that there is likely enough for the Court to have applied the guideline.  First, I think it requires that they be fictitious, that they have been invented for the perpetration of this offense, and that just simply wasn't the case here. But I would also say, Your Honor, that none of these accounts were difficult to trace. They were all readily Mr. McCallum's. They were all business accounts or personal accounts that he held for years. All of the movement of money was traceable through those accounts. I would also like to note that although there is an account in Canada, he had legitimate real estate investments in Canada predating 2008. So, again, he doesn't create a fictitious offshore account to facilitate the scheme. It's rather part of an umbrella of legitimate business activity that when it goes south, he approaches people he knows and he lies to them. Would you remind us with the enhancement, what difference the enhancement makes on his range? Yes, Your Honor. It's a two-level enhancement. His guideline range was 70 to 87 months. Off the top of my head, I'm fairly certain it is 57 to 64 months if you reduce by the enhancement. Okay. Thank you. You want to talk about likelihood of reoffending or the third-party risk notification? I gather that there was a — there's now a standing order in the Western District that modifies somewhat in view of Bowles what probation does and in consultation with the court, but that that was not widely known at the time you first wrote. Could you describe what's happened on that issue? I can, Your Honor. And I think it would be important, respectfully, for the court to reach it here because we do continue to object to the new language. We haven't decided a case on the new language. Not to — no, Your Honor, not to my knowledge. But the government also hasn't had a chance to respond to that. I don't believe so other than in this case. Yes. Well, okay, so we'll hear. The new language you can find at page 6 of my reply brief is, frankly, more vague than the old and still an unlawful delegation. The language itself doesn't actually impose upon Mr. McCollum or any defendant a condition whatsoever. It says instead that if at some future point the court in consultation with probation determines based on certain factors that you pose a risk, but this is sentencing and the conditions of release are meant to provide clarity to an individual of what conduct will result in their going back to prison, and there isn't any identified risk in the new language itself. There's no opportunity for one because this is a standard condition of release and not a special condition of release. But this does require the court and probation to consult at the start, which was lacking from the old condition, correct? Yes, Your Honor. But it doesn't actually identify the risk, which is what this Court held in Peterson and Bowles, that the sentencing court must identify the risk before imposing the condition and then set forth the scope of the notification requirement. Of course, the second part of the language in the new condition still delegates to probation that the probation officer may require a defendant or a supervisee to notify a person about the risk and may contact this third party to confirm that the notification occurred. That part is clearly a delegation that the court found improper in Bowles and Peterson. And if I may, I think the issue, when I read the Court's case law now, almost 20 years in its existence. You were there at Peterson, correct? I was there at Peterson. I respectfully believe this needs to be a special condition of release because in order to meet what this Court has directed, in order for the court to define the nature of the risk, it would need to be a special condition and not one imposed on every single defendant in the Western District of New York because the risk by And then the scope follows from there. It also fulfills the statutory obligation of the court under 3583D to ensure that the conditions it imposed are no greater deprivation of liberty than necessary. So, for example, the court may identify a risk, but there may already be a special condition addressing it. Isn't that something that a court would consider when a probation officer arrives and says, I would like authority to notify this person about this risk? If the court under 3583E engages in a modification on notice to the defendant and where a defendant will get an attorney to represent them . . . This wouldn't be a modification, but you have the intervention here of a judge. So the idea that it would be arbitrary or out of control is significantly alleviated. I don't suggest the court would be out of control. I certainly don't mean to imply that. But what the conditions of release require is clarity. In order to satisfy due process, a defendant has to know with clarity what conduct he or she can take and what conduct he or she cannot take. What will a defendant do to contravene this condition that could result in a deprivation of their liberty and being sent back to jail? And I think here, Your Honor, there is no definition. If it's an aspirational . . .  This just says that somebody will be contacted and warned that this defendant . . . that the potential victim is at risk of becoming a victim. But in what context and of what risk? No, I grant you that. I'm assuming that the judge would exercise a judgment about that and would not, for example, if you have somebody who's accused of running a Ponzi scheme, that the judge would not say, well, I'm going to warn a spouse about possible spouse abuse. It has nothing to do with the case. The judge is very unlikely to make that determination. But the speculation that Your Honor engages in is exactly why this is a violation of due process. That's a point well taken, but, yeah. And again, I would just like to note, we don't suggest that there is no basis for the potential risk notification condition in this case. We suggest that the one imposed is unconstitutionally vague, an improper delegation, and better off a special condition, giving Mr. McCollum actual notice of what the court expects. Thank you. We've kept you past your time. We have two minutes of rebuttal. We'll hear from the government. Good morning. May it please the Court. Michael DiGiacomo for the United States of America. If I may, I'd like to go in reverse order and start with the issue we were just discussing with the third-party notification. And it's the position of the government that, as we put in our brief, that when the district court provided the original condition, the third-party notification condition, it didn't comply with this Court's decision. And based upon, as you've noted, Your Honor, that there the western district came up with a standing order that now says if the court determines in consultation with probation that based on your criminal record, personal history and characteristics and the nature and circumstances of the offense, you pose a risk. And it's all there for you in black and white. I believe that this new standing order alleviates the concerns that were raised in this Court's decision, prior decision. And because ---- And what would be lost if this was applied as a special condition rather than as a standing order? It could be. I don't disagree that it could be applied as a standing condition. I was under ---- I was reading the defendant's brief in the argument that because it's vague as it sits here, that the court determined in consultation that ---- What's the nature of the risk that this is speaking to? The nature? The risk that he'll commit another Ponzi scheme? Well, I think it's the risk associated, Your Honor. Which is not very likely. The type of case it is. I apologize, Your Honor. No, go ahead. I think it's going to be fact basis. And to touch on what you had talked about, this is a financial fraud case that's before the Court. Would this notification now, because probation, let's assume Mr. McCollum, when he gets released from incarceration, applies for a job in the banking industry or decides to go out into the financial world? For whatever reason, he's successful in obtaining a job. It would be those type of circumstances that may warrant probation contacting the district judge that imposed the sentence? I don't think anyone is disputing that it might be inappropriate to have a notification requirement in certain circumstances. The problem is that the standing order is a standing order, applies across the board. It says you just pose a risk of committing further crimes. It's not specific at all as to the particular risk. You've just identified financial risk because of the Ponzi scheme. But if he goes out and gets a job at a zoo, does the zoo have to get notified? And then you move on. The probation officer may require you to notify the person about the risk, suggesting that it's the probation officer in the end who makes the decision. The court determines, you know, talks with the probation officer. So now the court is injected into this, but in a very inspecific way, in my view. Let me just clarify one thing. You have not had a, the government has not had a chance to take a position in writing on the merits and demerits of this standing order. Is that correct? That is correct. Because it came up kind of at the last moment. I was thinking that my colleagues and I might benefit from having a written submission on the merits, your position about the challenges raised by your adversary to the order. Judge Park? Yeah. Could we have a letter brief in the next week, say? Would that give you adequate time? That will give, if you tell me a week, we'll make sure it's done. Well, that would be great. It's holidays. Yeah, it is holidays. Holidays are over and we've got a little lapse time in between. So we'll get it done for a week. All right. That would be great. Thank you. Say no more than like five pages, double spaced? Yes, ma'am. Would that be adequate? Yes, Your Honor. We would appreciate that. Because I do have some concerns that I've identified. I don't know if my colleagues might as well. I had a related but slightly different question. Does the standing order, is it even clear that it applies retroactively to cases that have already been decided? My understanding it does, Your Honor, that the original condition as imposed on Mr. McCollum, he would now be subject to this one. Okay. Because it seems worded prospectively, but so it wasn't clear to me. Okay. Would that help? But we can address that. Would you like that addressed in our letter brief as well? Yes, please. Yes, please. Thank you. I would like to now go on one of the other questions, a couple points, with respect to the sophisticated means enhancement. Just I would like to, I know the Court had. Yeah, I would like to hear that. Looking at the documents that were created, they were, I could do that. That wasn't really sophisticated. I mean, they were, the notes were three lines. They were three lines. These were preexisting entities. There was very little, other than in any Ponzi scheme or any fraud, there was an intent to conceal and defraud, I suppose. But it seemed that the language of the guideline, especially intricate or complex, it's a little tough to apply in these circumstances. What's your strongest case for upholding the application of sophisticated means in this circumstance? On the factual basis, Your Honor, that the district court heard, my opponent's brief looks at what the defendant didn't do. I think as the district court judge, she examined and looked at what the defendant did do. Now, he ran into some financial problems, having lost over $4 million of his father-in-law's money. But what he did is when he went out in his own admission to the court, which is contained in the record, he acknowledged that he went out and tried to seek investors. I grant and concede the fact that his promissory notes are nothing that should be put in any type of legal forms book with respect to sophistication. But I think when you look at the forms, coupled with the fact of how he would promise people extraordinary high rates of return. But that's the crime. That is the crime. Why was that? What can you show? What can you point to as evidence that he committed that crime, by especially sophisticated means? Well, some of the cases that we've talked about, and that are cited in the briefs, include paying investors to entice and lure them to conceal the scheme, is to pay them back with other investor money. And then say, hey, by the way, now that I've met and paid you your 12 or 15 percent interest, before I give you this money, I would like for you to consider reinvesting, of which they did. But again, how is that different from just any Ponzi scheme? Can you point to anything specific about how this crime was committed that is especially sophisticated? Well, with respect to Mark Bayless, who he retained, I believe, close to $500,000 or $850,000, he provided him real estate documents, maps, things of that nature, to entice him to invest. And that was a significant investor. He provided him a property map. He said, this is the property I'm going to be tying your money up in, and things of that nature. Were those forged or fraudulent, the real estate maps? We don't know where they came from or how he obtained them. That was never adduced at trial. We know what he was presented from Mr. Bayless himself. He talked about and showed the court and the jury what he was presented. I cannot sit here and say that Mr. McCollum created those documents or where he got them, Your Honor. I would not take such liberty. So I believe when you couple the fact that he was using other investor money, he was enticing investors over in Canada, filtering their money down into the United States through that foreign bank account that he had up in Canada, the HSBC account. And the fact, you know, he lied to he was also concealing what he was doing to his, what I would call his business partners, and that being Menash Pesher. But, again, lying is not a surprising or sophisticated aspect of a Ponzi scheme. I guess we're more focused on the concealment aspect. The sophistication, how sophisticated was he? No, there's other, I will concede that there's other cases where individuals engaged in this practice were perhaps more sophisticated. Aren't we also comparing to garden variety mail fraud as opposed to securities fraud? Well, I mean, as the Court said, this wasn't the garden variety mail fraud, Your Honor, if that's the question you're asking me. Because of all the way he was successful in orchestrating this scheme, the Court, Judge Wolford, went in great lengths because these were objections that were raised as part of the pre-sentence investigation, and she made quite the detailed finding as to why she felt that this case was not the garden variety type of mail fraud case. Yeah, I'm trying to help you. No, I understand. But, I mean, what she cited to was the various things that he, you know, again, he created fictitious loan documents. He presented charts depicting overview of analysis prepared from various bank accounts. He represented victims so their investments were secured by property, which we had just talked about. He also told victim investors that their investments were secured by life insurance, which, in fact, was not true. He embellished his net worth, all things that helped him conceal and made this event sophisticated in the government's eyes as well as the district court's eyes. Okay, thank you very much. I think we have the arguments. Thank you. Ms. Mariano, you have two minutes rebuttal. Thank you, Your Honor. With respect to the promissory notes, it's important to know that they were not offered in every case, but in a handful of instances he provided a promissory note either upon request or possibly to induce a particular investor. They were not false. They were not fake. It is just like the promissory note I signed when I took my student loan. It says the bank gave me X amount of dollars, and I promised to pay them back by a certain date with a certain amount of interest. That is all those notes say. It doesn't make a representation on how the money will be used or that it's secured. But why can't one say that a Ponzi scheme is, by definition, a much more sophisticated than ordinary garden variety mail fraud? I think the Sentencing Commission could potentially say that, Your Honor, but they don't. And, in fact, under the Sentencing Commission ---- He was convicted of mail fraud, and then the question was were there sophisticated means used, and you could say that a Ponzi scheme, though ordinary for Ponzi schemes, is sophisticated compared with the ordinary mail fraud conviction. I would offer the Sentencing Commission statistics on securities and investment fraud. Under the statistics, which I do cite in my brief, only approximately 30 percent of cases actually receive this enhancement in securities and investment frauds. They don't break out Ponzi schemes, so to speak, Your Honor, but I think that that is a telling statistic. It's not meant to apply to every case. Mr. McCollum's case, before I get to this point, I want to reach Mr. Bayless's, the documents Mr. Bayless provided at trial. Doe Valley Real Estate is a true and actual real estate development in Kentucky, and if you Google it, you will find the map and you will find the documents that were provided. There was some introduction at trial that Mr. McCollum was likely being victimized by a yet separate real estate scam or Ponzi scheme that he thought was legitimate. We didn't get much evidence in that regard, and there was no further investigation, but I offer that a simple Google will produce those records. And finally, Mr. McCollum's fraud was born of failure and desperation and absolutely bears no hallmark of sophistication. It is disorganized. There is no consistent approach to investors. It is simply not sophisticated. And to apply it here would be to apply it in every case and actually dilute the value and importance of the enhancement. And this Court has recognized the value and importance of that enhancement in United States v. Amico, in United States v. Lewis. We accord the district court a fair amount of leeway in applying enhancements such as this one. Can you point to a case in which we've struck down the application of the sophisticated use enhancement? In the Second Circuit? No, Your Honor. I can point to both the Fifth Circuit and the Eighth Circuit. I cite those cases in my brief where they have stricken the use of the enhancement. And I do quote a district court decision in Alabama that I thought was on point but certainly in no way precedential here. All right. Thank you very much. I think we have the arguments. We'll reserve decision.